**Clester PLEASANT, Plaintiff-Appellant,**

v.

**Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant-Appellee.**

No. 71–2054.

United States Court of Appeals,
Fifth Circuit.

Nov. 4, 1971.

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N. Y. et al., 431 F.2d 409, Part I (5th Cir. 1970).

**750**

Andrew L. Monson, Dallas, Tex., for plaintiff-appellant.

Eldon B. Mahon, U. S. Atty., Charles D. Cabaniss, Roger J. Allen, Asst. U. S. Attys., Dallas, Tex., for defendant-appellee.

Before RIVES, BELL and AINSWORTH, Circuit Judges.

RIVES, Circuit Judge:

Pursuant to Social Security Act § 205(g), 42 U.S.C. § 405(g), Clester Pleasant sought judicial review in federal district court of a final order of the Secretary of HEW denying Pleasant's claim for social security disability payments. Both Pleasant and the Secretary moved for summary judgment, and on April 28, 1971, the United States District Court for the Northern District of Texas granted the Secretary's motion. From that decision, Pleasant appeals. We affirm the judgment below.

There is no dispute over the facts relevant to the issues raised in this appeal.

On April 22, 1962, Pleasant was severely injured in an automobile accident. On August 28 of that same year, he made application to the Social Security Administration for permanent disability compensation. That application was denied on September 19, 1962, owing to Pleasant's apparent failure to meet the disability earnings requirement that during the 40 calendar quarters (10 years) immediately preceding the injury, the applicant received social security credits for 20 quarters.

In May, 1968, it was discovered that one of Pleasant's employers during the 10 years preceding his 1962 accident had failed both to report the existence of one quarter's employment and to make the requisite social security payments. The upshot was that in retrospect Pleasant had been in satisfaction of the 20/40 quarter requirement at the time of his accident.[1]

Accordingly, Pleasant sought to reopen his application of August 28, 1962,

---

1. In the administrative litigation which ensued, some dispute evolved as to the exact date on which Pleasant could satisfy the 20/40 requisite. The hearing examiner found Pleasant in satisfaction as of April 22, 1962. The Social Security Administration Appeals Council, however, averred that the proper date would have been Oc-

and to recover retroactive disability payments.[2] On July 22, 1969, the Director of the Bureau of Disability Insurance, Social Security Administration, denied relief. Pleasant timely requested a hearing before a hearing examiner, which hearing was conducted on September 5, 1969. The hearing examiner agreed with Pleasant and awarded relief, ordering back payment of benefits from April 22, 1962, the date of the accident.

The examiner noted that ordinarily the denial of Pleasant's 1962 application when it was filed would be deemed a final administrative order not subject to reopening. *See* 42 U.S.C. §§ 405(g), (h); Social Security Administration Reg. 4, 20 C.F.R. §§ 404.908, .916, .940, .951. However, he reasoned that an exception to the rule obtained in this case. Namely, Social Security Administration Reg. 4, 20 C.F.R. § 404.957, provides in relevant part:

"An initial or reconsideration determination of Administration or a decision of the hearing examiner or of the Appeals Council which is otherwise final under § 404.908, § 404.916, § 404.-940 or § 404.951 may be reopened:

\* \* \* \* \* \*

"(c)    At any time when:

\* \* \* \* \* \*

"(7)    Such initial or reconsidered determination or decision was that the claimant did not have the necessary quarters of coverage for an insured status but thereafter earnings were credited to his account, pursuant to section 205(c) (5) (C), (D), or (G) of the Act, which would have given him an insured status at the time of such determination or decision if such earnings

tober 1, 1962, if it were proper to reopen Pleasant's application. However, the Appeals Council ruled that reopening was improper. At any rate, the question of when onset of benefits should have begun has no bearing on the issue presented this Court and as such will not be discussed. The issue here is whether Pleasant's 1962 application should be reopened.   .

had been credited to his account then."

Key, then, to allowing a reopening of Pleasant's 1962 application is a determination that, upon discovery of the error in the number of quarters possessed by Pleasant prior to his accident, the correction in his Social Security records was made pursuant to Social Security Act §§ 205(c) (5) (C), (D), or (G), 42 U.S.C. §§ 405(c) (5) (C), (D), or (G). Subsections (C) and (D) are clearly inapposite. Apparently the hearing examiner felt that correction to Pleasant's account was rightly made under authority of subsection (G) which provides as follows:

"(G)    [Corrections are to be made] to correct errors made in the allocation, to individuals or periods, of wages or self-employment income entered in the records of the Secretary."

As such, Pleasant prevailed at the hearing.

On its own motion, the Social Security Administration Appeals Council reviewed Pleasant's case and on February 16, 1970, reversed the hearing examiner's decision. The Appeals Council held that Regulation 4, § 404.957, could not be triggered in this case since the correction of Pleasant's records had not been made under authority either of subsections (C), (D) or (G), but rather under authority of subsection (H) which provides as follows:

"(H)    [Corrections are to be made] to include wages paid during any period in such year to an individual by an employer if there is an absence of an entry in the Secretary's records of wages having been paid by such employer to such individual in such period."

2.    By another decision of the Social Security Administration, Pleasant has been receiving disability benefits for his 1962 accident since February of 1968. The sole issue presented here is whether he should be awarded benefits retroactively for the period from the date of the accident until February, 1968.

Accordingly, the decision of the hearing examiner was reversed.[3] By operation of law, the Appeals Council's 1970 decision became a final decision of the Secretary of HEW and thus subject to judicial review.

As noted above, Pleasant then sought review in federal district court. Summary judgment was granted to the Secretary.

Rule 56 permits granting of summary judgment upon motion by one of the parties in a case in which (1) there is no genuine issue of material fact, and (2) the movant is entitled to prevail as a matter of law. In this case, there is no question as to issues of fact. Necessarily, then, one must reach the merits to determine whether the district court was correct in its assessment that the Secretary was entitled to a judgment as a matter of law.

Both parties agree that if Pleasant is entitled to a reopening of his 1962 application his authority must sprout from Regulation 4, § 404.957(c) (7), which, in turn, is rooted to sections 205(c) (5) (C), (D) and (G) of the Social Security Act. The text of the above enumerated provisions (set out *supra*) makes it clear beyond cavil that Pleasant's suit to reopen his 1962 application must as a matter of law be denied. In a recent case, Craig v. Finch, 5 Cir. 1969, 416 F.2d 721, cert. denied, 1970, 397 U.S. 953, 90 S.Ct. 981, 25 L.Ed.2d 137, this Court limited the scope of section 205(c) (5) (G) — it will be recalled that subsections 205(c) (5) (C) and (D) are clearly inapposite. Therein it was said:

> "Section 205(c) (5) (G) relates only to situations in which earnings were reported but allocated to the wrong person or period. In this case all wages reported to the Secretary had been properly allocated. * * * In short, Section 205(c) (5) (G) deals with errors in the Secretary's records to the incorrect allocation of wages to wrong individuals or periods. It does

not allow changes to be 'made at any time' in the Secretary's reports when the changes sought are based upon missing information never previously reported."

*Id.* at 724 (footnote omitted). Similarly, the error in Pleasant's account could not be corrected pursuant to subsection (G). Concomitantly, then, Regulation 4, § 404.957(c) (7) is not actuated. As in *Craig* this Court should deny relief. For, on the merits, the district court was correct both in concluding that *Craig* is sound authority and in reasoning that the Secretary should prevail as a matter of law.

Pleasant argues that *Craig* should not control this case. He draws a factual distinction between the situation in *Craig* and that here presented:

> "The records of the Secretary in the Craig case had not been corrected prior to the hearing, as they were here. They were not even corrected at the time when the case went to trial, but after a rehearing when the Court found the Secretary's records to be unreliable. Oral testimony developed at the rehearing was the basis for finding the necessary number of quarters. In this case the quarter of coverage was already in the records and had not been disputed by the Secretary either at the hearing or in the District Court."

(Appellant's Brief at 8–9). Be that as it may, the factual distinction pointed up cannot spark a different result. Whether the correction was made before, during, or after the hearing is of no import. The controlling consideration is whether the correction was the result of section 205(c) (5) (G). As in *Craig*, the correction here at issue was not, and could not have been, made under authority of that statutory provision. Put simply, Pleasant's argument presents a distinction without a difference.

---

3. The Appeals Council cited other authority and support for its position which will be discussed *infra*.

Similarly, his contention is unpersuasive that to give section 205(c) (5) (G) and Regulation 4, § 404.957(c) (7), the same interplay here as in *Craig* vitiates the over-all statutory purpose of the Social Security Act. Admittedly, that Act should be interpreted "* * * in such a manner that its overriding purpose will be achieved, even if the words used leave room for a contrary interpretation." Haberman v. Finch, 2d Cir. 1969, 418 F.2d 664, 666. Here not only do the words of the statute "leave room for a contrary construction," but that is the only reasonable construction apparent. Section 205(c) (5) (G) does not afford one modicum of relief to Pleasant. This conclusion is supported by a Senate Committee report as to the intent of the statutory provision in question:

> "[It exists] [t]o correct errors resulting from the employer's reporting of wages for an incorrect period, or from his reporting wages for one individual under the name and account number of another."

S.Rep. No. 1669, 81st Cong., 2d Sess. 118, U.S.Code Congressional Service, p. 3412. In this case the employer, who came forward in May of 1968 and stated that Pleasant had in fact worked for him during one quarter of the ten years preceding the 1962 accident, had not reported that employment either during the wrong pay period or to the wrong account. As such there could be no evidence on the face of the Secretary's records which would corroborate the contention that Pleasant had actually worked during the quarter in question.

The absence of corroborative support in the Secretary's records points up one explanation for the distinction drawn between corrections made pursuant to section 205(c) (5) (G) as opposed to section 205(c) (5) (H). In the first instance applications may be reopened; in the latter they cannot. In subsection (H) situations, the Secretary has no prior record of the claim of additional earnings which can be consulted to bolster the testimony of an employer who comes forward years after the period in which work was allegedly performed, while in subsection (G) situations the Secretary's records would furnish corroborating evidence of the prior quarter's work.

Affirmed.